**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

TAWANIA HOLLINS                                                                    **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 1:09CV314-A-D**

**PREMIER FORD LINCOLN MERCURY, INC.**                              **DEFENDANT**

## MEMORANDUM OPINION

Before the Court is Defendant's Motion for Summary Judgment [25] and Plaintiff's Motion for Leave to File a Sur-Rebuttal [34]. After reviewing the motion, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

Plaintiff, a forty-three year old African American female, was initially hired as a salesperson at Premier Ford Lincoln Mercury, Incorporated ("Premier Ford") on July 9, 2005. Plaintiff was hired by Premier Ford's Used Car Sales Manager Joe Bryan. Plaintiff voluntarily resigned from her employment at Premier Ford on July 13, 2007. Plaintiff told Bryan that the reason she was leaving was because she thought she could do better at Carl Hogan Honda since Cecil Hill, Premier Ford's Finance Manager, refused to provide her with the necessary support to secure financing for her car deals. Plaintiff contends that, before she resigned, she and another salesperson, Debbie Griffin, went and talked with Chris Keene, Premier Ford's General Manager, about how Hill handled their deals and the language Hill used when speaking to them.

After working at Carl Hogan Honda for approximately three months, Plaintiff called Bryan and expressed her desire to return to Premier Ford as a salesperson.  Bryan contends that even though he had reservations about Plaintiff returning to work at Premier Ford, he nevertheless made the decision to rehire her. Plaintiff therefore resumed her employment at Premier Ford on September 12, 2007. Upon returning to work, Plaintiff concedes that she cannot recall work-related problems or issues with Cecil Hill. Plaintiff, however, does allege that at a work Christmas party in December 2007, Bryan commented on her dress and touched her calf, and that another coworker "cussed her out."

In October 2008, Plaintiff injured her knee while at work.  Plaintiff contends that she began having work-related problems after suffering this injury.  While Plaintiff concedes that she was never prohibited from or reprimanded for leaving work in order to go to the doctor, Plaintiff claims that, after hurting her knee, she no longer had "normal conversations" with management. Plaintiff also asserts that, when she took a couple weeks off of work in January and February due to her knee injury, she was informed that her customer list was being distributed to other salespeople, and that she had been evicted from her office.

After returning to work from her knee injury, Plaintiff continued her work as a salesperson until February 6, 2009, when her employment was terminated.  The reasons for Plaintiff's termination were that she allegedly displayed unprofessional conduct and interfered with another salesperson's customer in violation of Premier Ford's policy. On December 30, 2009, Plaintiff filed a Complaint alleging race discrimination, sex discrimination, sexual harassment, and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.* and age discrimination

under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*[1] On November 24, 2010, Premier Ford filed a Motion for Summary Judgment, arguing it is entitled to judgment as a matter of law as to all of Plaintiff's claims, including Plaintiff's claim for punitive damages.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."

---

[1] Plaintiff's Complaint also alleged claims for defamation in violation of state law and disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101 *et seq.* However, Plaintiff has conceded these claims in her Brief in Opposition to Defendant's Motion for Summary Judgment.

Id. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

### III. ANALYSIS AND DISCUSSION

*Motion to File Sur-Rebuttal*

On January 14, 2011, Plaintiff filed a Motion for Leave to File a Sur-Rebuttal to Defendant's Reply [34]. Plaintiff's sur-rebuttal is attached as Exhibit A to her Motion. Plaintiff claims that this sur-rebuttal "w[ill] benefit the court and help in clarifying the complex matter before it." The Court, however, finds that Plaintiff's sur-rebuttal is a mere regurgitation of arguments already made either in her Complaint or her forty-one page Response in Opposition to Summary Judgment. As such, Plaintiff's Motion for Leave to File a Sur-Rebuttal is denied.

*Title VII Sexually-Based Hostile Work Environment Claim*

    a. Timeliness of Plaintiff's EEOC Charge

Defendant contends that Plaintiff failed to file her EEOC charge within 180 days of the sexual harassment she allegedly suffered while employed at Premier Ford. Consequently, Defendant states that Plaintiff's hostile work environment claim is time-barred. "A Title VII claimant must file charges with the EEOC within 180 days after the alleged illegal conduct." Hood v. Sears Roebuck & Co., 168 F.3d 231, 232 (5th Cir. 1999) (citations omitted). In response, Plaintiff contends that she may prove her hostile work environment claim with acts of harassment outside of the 180-day period, as long as some act contributing to the claim occurred within this filing period.

In National Railroad Passenger Car v. Morgan, 536 U.S. 101, 115-18, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002), the Supreme Court addressed for the first time under what circumstances a Title VII plaintiff may file suit based on incidents outside the charge-filing period.  The Court first announced a bright-line rule that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113, 122 S. Ct. 2061. The Court stated that it is "easy to identify" discrete acts, which include "termination, failure to promote, denial of transfer, or refusal to hire." Id. at 114, 122 S. Ct. 2061. However, the Morgan Court went on to recognize that "[h]ostile work environment claims are different in kind from discrete acts." Id. at 115, 122 S. Ct. 2061.  The Court noted that the "very nature [of hostile work environment claims] involves repeated conduct[;]" thus, "[t]he 'unlawful employment practice' [ ] cannot be said to occur on any particular day." Id., 122 S. Ct. 2061. The Court held that since "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment' practice[,] . . . [i]t does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Id. at 117, 122 S. Ct. 2061.  Therefore, in this case, Plaintiff may use past acts to support her hostile work environment claim, as long as a related act contributing to the same actionable claim occurred within 180 days prior to Plaintiff's filing of her EEOC charge.

Plaintiff's EEOC charge was filed on May 22, 2009.   Defendant contends that Plaintiff's entire claim is based on acts that allegedly occurred in 2007, before Plaintiff voluntarily resigned.[2]   Plaintiff, on the other hand, contends that she was sexually harassed after she was rehired at Premier Ford.   Plaintiff asserts that Johnny Smith "cussed [her] out" shortly after she returned to work at Premier Ford in 2007.   Further, she complains that Bryan touched her calf at work Christmas party in 2007.   Even if both of these incidents are true, both still fall out of the 180-day filing period.   However, Plaintiff also claims that Bryan called her a "bitch" on February 6, 2009; the day her employment was terminated.   Assuming Bryan's language constitutes "harassment," this "act" would fall within the 180-day period; thus, making Plaintiff's claim not time-barred.

b.   Hostile Work Environment

Plaintiff asserts that she was subjected to a sexually-based hostile work environment while working at Premier Ford.[3]   Plaintiff may establish a violation of Title VII by proving that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is so severe or pervasive that it alters the conditions of employment and creates a hostile or abusive working environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed.

---

[2] It is noteworthy that Plaintiff never alleges a constructive discharge claim in this case.

[3] The first task of the Court, when evaluating a claim of sexual harassment under Title VII, is to "determine whether the complaining employee has suffered a 'tangible employment action.'" Williams v. Barnhill's Buffet, Inc., 290 F. App'x 759, 761 (5th Cir. 2009) (citing Casiano v. AT & T Corp., 213 F.3d 278, 283 (5th Cir. 2000)). "If she has, her suit is classified as a 'quid pro quo' case; if she has not, her suit is classified as a 'hostile environment' case." Williams, 290 F. App'x at 761; Russell, 234 F. App'x at 201. Here, the Court skips this initial analytical step, as Plaintiff has expressly analyzed and labeled her claim as one for "hostile work environment." Plaintiff brings a separate claim for sex/gender discrimination.

2d 295 (1993); <u>Woods v. Delta Beverage Group, Inc</u>., 274 F.3d 295, 298-99 (5th Cir. 2001). In order to establish a claim that sex discrimination has created an abusive or hostile work environment, a plaintiff must prove the following five elements: (1) that she belongs to a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment was based on race or gender; (4) that the harassment affected a term, condition, or privilege of employment; and (5) that her employer knew or should have known of the harassment and failed to take prompt remedial action.[4] <u>Woods</u>, 274 F.3d at 298; <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 509 (5th Cir. 1999); <u>Hockman v. Westward Communications, LLC</u>, 407 F.3d 317, 325-26 (5th Cir. 2004).

For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Ramsey v. Henderson</u>, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks and citation omitted); <u>Watkins v. Texas Dept. of Criminal Justice</u>, 269 F. App'x 457, 463-64 (5th Cir. 2008) (per curiam) (unpublished). The Supreme Court has explained that courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." <u>Harris</u>, 510 U.S. at 23, 114 S. Ct. 367. "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively

---

[4] The Fifth Circuit has recognized that, following the Supreme Court's holdings in <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), only the first four elements need to be satisfied when the alleged harasser had supervisory authority over the employee. <u>See Watts v. Kroger Co.</u>, 170 F.3d 505, 509 (5th Cir. 1999).

offensive, meaning that the victim perceived it to be so." <u>Harvill v. Westward Communications, LLC</u>, 433 F.3d 428, 434 (5th Cir. 2005) (quoting <u>Shepherd v. Comptroller of Pub. Accounts</u>, 168 F.3d 871, 874 (5th Cir. 1999) (quotation marks omitted)). The Supreme Court has repeatedly stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citing <u>Oncale v. Sundowner Offshore Servs., Inc</u>., 523 U.S. 75, 82, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)).  The legal standard requires proof of severe or pervasive conduct that can be characterized as "extreme." <u>Faragher</u>, 524 U.S. at 788, 118 S. Ct. 2275.

Here, the conduct complained of by Plaintiff does not rise to the level of a hostile work environment. Plaintiff complains that when she first worked for Premier Ford in 2007, Cecil Hill called her a "black bitch" and a "fucking bitch."  Also, Hill allegedly told Plaintiff that the only reason a customer bought a car from her was because he wanted to have sex with her, and that "she needed to reward a customer with sex after he bought two cars from her." According to Plaintiff, Johnny Smith – a coworker – also "cussed her out."  Bryan also allegedly touched Plaintiff's calf at a Christmas party, and called her a "bitch" on the day her employment was terminated. Plaintiff states that she complained about this treatment on numerous occasions.

Even accepting all of the above allegations as true, the Court is unable to characterize this conduct as "extreme." The Supreme Court has repeatedly stated that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the 'terms and conditions of employment.'" <u>Faragher</u>, 524 U.S. at 788, 118 S. Ct. 2275 (citation omitted) (citing <u>Oncale</u>, 523 U.S. at 82, 118 S. Ct. 998). Further, the Fifth Circuit has pointed out that, in the context of hostile environment cases, Title VII "was only meant to bar conduct that is so severe and pervasive that it *destroys* a protected class member's opportunity to succeed in the workplace." <u>Shepherd</u>, 168 F.3d at 874-75 (emphasis added). In <u>Shepherd</u>, the plaintiff complained that a co-worker had made several sexually suggestive comments, often tried to look down her clothing, touched and rubbed her arm, and twice invited her to sit on his lap during office meetings. <u>Id.</u> at 872. Specifically, in <u>Shepherd</u>, the plaintiff testified that her coworker told her, "your elbows are the same color as your nipples," and "you have big thighs" while he simulated looking under her dress. <u>Id.</u>  The coworker stood over Shepherd's desk on several occasions and tried to look down her clothing. <u>Id.</u> He also "touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her." <u>Id.</u> Finally, on two occasions, after coming in late to an office meeting, "Moore patted his lap and remarked, 'here's your seat.'" <u>Id.</u>   The Fifth Circuit held that this conduct, although "boorish and offensive," was not sufficiently severe to be actionable under Title VII.  <u>Id.</u> at 874-75. To illustrate how frequent harassment must be to sustain a hostile work environment claim under Title VII, the Fifth Circuit contrasted the facts of <u>Shepherd</u> with two prior Fifth Circuit cases – <u>Farpella-Crosby v. Horizon Health Care</u> and <u>Waltman v. International Paper Company</u> – in which the harassment was severe enough for the plaintiffs to withstand the defendants' motions for judgment as a matter of law. <u>Id.</u> at 875.

In <u>Farpella-Crosby v. Horizon Health Care</u>, 97 F.3d 803, 805 (5th Cir.1996), the defendant's comments were considered frequent and severe enough to sustain a jury verdict for the plaintiff. In that case, Defendant Blanco frequently made comments "attributing Farpella-Crosby's large number of children to a proclivity to engage in sexual activity." <u>Id.</u> Specifically, Farpella-Crosby complained of the following behavior by Blanco:

> Blanco repeatedly commented that he "knew what she liked to do" because she had seven children and that she "must not have a television." At a baby shower held at the facility for another employee, Blanco joked to the group that Farpella-Crosby "[didn't] know how to use condoms." Blanco also frequently inquired about Farpella-Crosby's sexual activity. He would often question her . . . about where [she] had been the night before (while off duty), whether [she] had taken men home, and whether [she] "[had gotten] any." Farpella-Crosby . . . testified that Blanco made similar comments two or three times a week. [She] testified that the comments were so frequent that she could not possibly remember each instance. Blanco threatened Farpella-Crosby with her job on numerous occassions when she asked him to stop making these comments.
>
> On one occasion, after Farpella-Crosby had eaten lunch in her office with a boyfriend, Blanco said that "when you open the door [to the office], the smell of fish just hits you in the face. You shouldn't be doing that kind of think at work." . . . Blanco essentially admitted that he did question Farpella-Crosby about her personal life, but claimed that he did so because he believed the lack of sleep resulting from sexual activity could affect her work performance.

<u>Id.</u> (last set of brackets in original). On these facts, the Fifth Circuit held that "there is substantial evidence from which the jury could have concluded that Blanco's comments and questions were sufficiently severe and pervasive as to alter the conditions of [Farpella-Crosby's] employment and create an abusive working environment." <u>Id.</u> at 806.

The harassment alleged by the plaintiff in <u>Waltman v. International Paper Company</u>, 875 F.2d 468 (5th Cir. 1989), was even worse than in <u>Farpella-Crosby</u>. There, the Fifth Circuit reversed summary judgment for the defendant on the following facts: One of the defendant's employees several times broadcast obscenities directed at Waltman over the

public address system. Id. at 470. After that incident, "other employees began making suggestive comments to Waltman." Id. at 470-71. Waltman's supervisor urged her to have sex with a coworker. Id. at 471. On several occasions, he also "pinched her buttocks with pliers and tried to put his hands in her back pockets." Id. Her supervisor and coworkers constantly made such remarks as "I would like a piece of that" (referring to Waltman). Id.

Over the course of about three years, Waltman received over thirty pornographic notes in her locker. Id. "Sexually explicit pictures and graffiti were drawn on the walls of the powerhouse, on the restroom walls and on the elevator." Id. Waltman also testified that many of the men would leave their lockers open and that the lockers contained pornographic pictures and used tampons. Id. at 471 & n.1. Waltman's supervisor testified that the walls of the work space contained drawings of naked men and women. Id. at 471. On one occasion, one employee told another that "Waltman was a whore and that she would get hurt if she did not keep her mouth shut." Id. On another occasion, Waltman's coworker told her that he "would cut off her breast and shove it down her throat." Id. That same coworker later "dangled Waltman over a stairwell, more than thirty feet from the floor." Id. On other occasions, Waltman's coworkers grabbed her breasts and thighs. Id. Waltman testified that eighty percent of the men in her work place had made sexual comments to her at some point, and a week did not go by without such comments being made. Id.

On these facts, the Fifth Circuit held that Waltman had raised a fact issue regarding the existence of a hostile work environment at her work place. Id. at 478. The Fifth Circuit in Shepherd, after contrasting the facts with the ones present in Walman and Farpella-Crosby, concluded that the conduct and comments in Shepherd were not even in the same league as

that behavior for which courts typically afford relief under Title VII. Shepherd, 168 F.3d at 874-75.

In this case, the Plaintiff's complaints are even less severe than those in Shepherd. Thus, they are not actionable under Title VII. See Gibson v. Potter, 264 F. App'x 397, 398 (5th Cir. 2008) (holding that conduct of supervisor who "grabbed [plaintiff] on the buttocks and made suggestive comments" while she was conversing with another employee was not "sufficiently severe or pervasive to alter a term or condition of [plaintiff's] employment"); Baker v. FedEx Ground Package Sys., Inc., 278 F. App'x 322, 329 (5th Cir. 2008) (supervisor's comments to African-American employee that "she did not want to work with people like" the plaintiff employee and that "whites rule" were not sufficiently severe to survive summary judgment on a race-based hostile work environment claim); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337 (5th Cir. 2007) (holding that a supervisor's infrequent and isolated comments directed to the plaintiff about "ghetto children" and other racially insensitive remarks did not create a fact issue as to whether there was severe or pervasive harassment); Septimus v. Univ. of Houston, 399 F.3d 601, 612 (5th Cir. 2005) (holding that one two-hour "harangue" by a supervisor and use of a mocking tone on one occasion, and another supervisor's comment comparing the plaintiff to a "needy old girlfriend," did not amount to a severe or pervasive working environment); Hockman, 407 F.3d at 328 (holding that sexually suggestive comments, slapping plaintiff on the behind with a newspaper, grabbing or brushing up against plaintiff's breasts and behind, and attempting to kiss plaintiff did not qualify as severe); Derouen v. Carquest Auto Parts, Inc., 275 F.3d 42, 2001 WL 1223628, at *1 (5th Cir. Sept. 24, 2001) (holding that plaintiff's allegations that co-

worker attempted to grab her breast and later touched and rubbed her thigh, that customers made sexually threatening remarks, and that supervisors did not respond to her complaints about these incidents, did not support a hostile work environment claim). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's sexually-based hostile work environment claim is granted.

### Title VII Sex and Race Discrimination Claims

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that her termination was improperly based on race and sex discrimination. Plaintiff seeks to prove her case circumstantially based on the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Once a plaintiff has made her prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id.

Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).[5]

---

[5] In Stone v. Parish of East Baton Rouge, the Fifth Circuit, in a footnote, stated: "Stone also argues that he is proceeding under a "mixed-motive" analysis. Stone may only proceed under a mixed-motive analysis where direct evidence is presented and the employer asserts that the same adverse employment decision would have been made regardless of the discrimination. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 308 (5th Cir. 2004). Because Stone did not bring any direct evidence, his mixed-motive theory is unavailing." 329 F. App'x 542, 546 n.1 (5th Cir. 2009). This footnote was in reference to the Plaintiff's racial discrimination claim. Id. The statement in that footnote that direct evidence is required in order to proceed under a mixed-motive theory is clearly against the Supreme Court's ruling in

a. Sex Discrimination

*Prima Facie Case*

There appears to be no dispute in this case that Plaintiff meets the first three prongs of her prima facie case: (1) she is a female; thus, a member of a protected class under Title VII; (2) she was qualified for the position she held as a salesperson; and (3) she experienced an adverse employment decision (i.e., termination). Generally, the fourth prong of the McDonnel Douglas prima facie case requires a plaintiff to show either that (i) she was replaced by someone outside the protected class or (ii) other similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. Okoye, 245 F.3d at 512-14. However, the prima facie case framework "was never intended to be rigid mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). Instead, "[t]he central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Id. (internal citations omitted). Here, Plaintiff was not replaced by someone outside of her protected class, as she concedes Premier Ford hired a female upon her termination. However, even so, Plaintiff contends that she was treated differently than similarly situated employees and that she otherwise raises an inference of discrimination.

---

Desert Palace as well as established Fifth Circuit precedent. See Smith, 602 F.3d at 322 ("Title VII does not affirmatively require direct evidence from a plaintiff, whether in a discrimination or retaliation context . . . ."); Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007) ("A Title VII plaintiff can establish unlawful employment discrimination under a mixed-motive theory using either direct *or circumstantial* evidence.") (emphasis added). Likewise, in Rachid, the Fifth Circuit, after concluding that Desert Palace is applicable to the ADEA, specifically held that "direct evidence of discrimination *is not necessary* to receive a mixed-motive analysis . . . ." 376 F.3d at 311 (emphasis added).

Plaintiff was terminated in February 2009, for allegedly unprofessional conduct and "stealing" a customer from another salesperson. On the day Plaintiff was terminated, an incident occurred between her and a coworker. Premier Ford salesman, Robert Jamerson – an African American male – was attending to a customer regarding the possible sale of an automobile. Plaintiff and another Premier Ford salesman, Carvin Tilley, were apparently both on the car lot and observed the customer and the customer's daughter. Defendant asserts that Jerry Turner, a fellow salesperson, witnessed the Plaintiff see the customer and start going over to her. Defendant asserts that Jerry Turner told the Plaintiff that she should not approach the customer in order to not interfere with Jamerson's sale. Despite being warned, Plaintiff allegedly approached the customer anyway and asked the customer if she wanted to be waited on by her rather than by Jamerson. According to the Defendant, this caused a verbal confrontation to ensue between the Plaintiff and Jamerson. In his deposition, Bryan testified that he investigated the incident and three other salespeople told him that the Plaintiff was indeed "stealing" Jamerson's customer. Bryan additionally testified that he overheard some of the confrontation between Plaintiff and Jamerson. Bryan claims he terminated Plaintiff because of her conduct, and because interfering with a coworker's sale is against Premier Ford's policy.

Plaintiff denies she attempted to interfere with Jamerson's sale. Plaintiff claims that she knew the customer and the customer's daughter, and that they had specifically asked for the Plaintiff to assist them. According to Plaintiff, the customer specifically told her, "I don't want to work with this guy," referring to Jamerson. Plaintiff asserts that she told the customer, "if you really don't want to work with him . . . you just [ ] need to let him know." Plaintiff

provided an affidavit from the customer supporting Plaintiff's version of the facts. Further, Plaintiff alleges that she was not even the only salesperson who told the customer this, yet she was the only one terminated.[6] Plaintiff states that Carvin Tilley – a male – also told the customer's daughter that they did not have to work with Jamerson if they did not want to. Plaintiff claims that Tilley is a similarly situated comparator, and that he was neither accused of nor reprimanded for interfering with Jamerson's sale. Plaintiff declares this disparity in treatment is because Tilley is male and Plaintiff is female.

"[I]n order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company retained." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001) (citations omitted). In Lee v. Kansas City South Railway. Co., the Fifth Circuit explained how exacting this standard can be:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

---

[6] Plaintiff additionally claims that Bryan did not properly investigate the incident, as he did not even speak to the customer about what had occurred, and his investigation only lasted around an hour before terminating Plaintiff's employment.

574 F.3d 253, 259-60 (5th Cir. 2009) (citations omitted). However, the Fifth Circuit has also noted that in order to establish a prima facie case, a plaintiff "need only make a very minimal showing." Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996). Viewing the evidence here in the light most favorable to the nonmovant, the Plaintiff has created a factual dispute as to whether she was treated differently than a similarly situated individual, Carvin Tilley, outside of her protected class. It appears that Tilley and the Plaintiff shared the same supervisor, they were both salespeople, and they had similar work responsibilities. While Defendant contends that their actions on the day in question were not "nearly identical," this point is factually disputed, and thus not proper for the Court to decide at the summary judgment stage. That is, Defendant claims that Tilley, unlike the Plaintiff, was not attempting to "steal" Jamerson's customer when he spoke with the customer's daughter. However, Plaintiff and the customer contend otherwise. Plaintiff states that she and Tilley both merely told the customer that they did not have to work with Jamerson if they did not wish to. Thus, in order for the Court to conclude that the actions of Tilley and the Plaintiff were not nearly identical, the Court would have to accept Defendant's version of the facts to the exclusion of the Plaintiff's. However, when such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." Reeves, 530 U.S. at 150, 120 S. Ct. 2097. As such, Plaintiff has created a sufficient factual dispute to meet her burden of showing a prima facie case of sex discrimination.

*Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a prima facie case of discrimination, the defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. Here, Defendant asserts that Plaintiff was terminated because she interfered with another salesperson's customer and because she displayed unprofessional conduct. This articulated reason satisfies Defendant's burden of production.

*Pretext and Mixed Motive*

As noted above, the Fifth Circuit in Rachid v. Jack in the Box, Incorporated, set forth a new framework for pretext/mixed-motive cases at the summary judgment stage. That is, the court announced a "modified McDonnell Douglas approach" for the summary judgment framework in mixed-motive cases. 376 F.3d at 312.[7] Like McDonnell Douglas, the Fifth Circuit's mixed-motive analysis has three steps. The first two steps in this mixed-motive approach, prima facie case and legitimate, nondiscriminatory reason, are identical to the traditional McDonnell Douglas pretext analysis. However, in the final step, the Rachid court held that "the plaintiff must . . . offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead pretext for discrimination (pretext alternative) or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Id. (citations omitted). Here, Plaintiff alleges that she can show pretext and mixed motive.

---

[7] The "modified McDonnell Douglas" framework appears to be unique to the Fifth Circuit. That is, since Desert Palace, the circuit courts have developed widely differing approaches to the question of how to analyze summary judgment challenges in Title VII mixed-motive cases. See White v. Baxter Healthcare Corp, 533 F.3d 381, 398-99 (6th Cir. 2008) (critically evaluating how various circuits apply the mixed-motive framework).

Plaintiff first claims that Defendant has provided inconsistent responses as to why Plaintiff's employment was terminated. Plaintiff claims that Defendant only stated Plaintiff was terminated due to unprofessional conduct *after* Bryan conceded there no written company policy proscribing Plaintiff's alleged conduct. However, Plaintiff's warning report explicitly states that Plaintiff was terminated for "conduct." Thus, Plaintiff's contention that Defendant recently altered its story is not well taken.

Plaintiff next avers that the actual reason for her termination is false and unworthy of credence. On Plaintiff's "Employee Warning Report," it states that she was terminated for "violating company policy" against interfering with another salesperson's customer, which Defendant stated is "rude" and "unprofessional" conduct. Plaintiff asserts that no such policy exists. Bryan conceded in his deposition testimony that in fact there is not a policy against "stealing customers." Similarly, a prohibition against interfering with a coworker's customer is absent from Premier Ford's "Sales Standards." Bryan maintained in his deposition that, while this is not a written policy, it is an unwritten professional courtesy that is "common knowledge" in the automotive community. Plaintiff, while admitting that this might be a professional courtesy, nevertheless contends that she could not be terminated for violating a "policy" that does not exist.

Plaintiff next uses workplace comments in order to provide circumstantial evidence of discrimination. Plaintiff complains that she was allegedly called a "black bitch" and a "fucking bitch" by Hill, called a "bitch" by Bryan on the day she was terminated, and was "cussed out" by her coworker Johnny Smith. Lisa Bush, a former saleswoman, also testified that she heard derogatory comments made towards Plaintiff. Bush stated that Premier Ford

21

"wasn't a place for women." Hill also allegedly told Plaintiff that the only reason a customer bought a car from her was because he wanted to have sex with her. Further, Plaintiff contends that Lisa Bush testified that a coworker told her "she needed to be screwed."

In regards to workplace remarks, the Fifth Circuit has explained that "comments are evidence of discrimination only if they are 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue. Comments that do not meet these criteria are considered stray remarks . . . ." Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 380 (5th Cir. 2010). Thus, "'comments that are vague and remote in time are insufficient to establish discrimination.'" Spears v. Patterson UTI Drilling Co., 337 F. App'x 416, 420 (5th Cir. 2009) (quoting Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir. 1996)).

Here, while the single comment made by Bryan on the day Plaintiff was terminated is relevant, the comments made by Hill are too remote in time to conclusively demonstrate racial animus. Although Plaintiff did not specify a date as to when these comments were made, she did concede that they were made prior to when she voluntarily resigned. Thus, all of Hill's comments were made sometime before July 2007, and Plaintiff was not terminated until February 2009. See Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991), *cert. denied*, 503 U.S. 908, 112 S. Ct. 1267, 117 L. Ed. 2d 495 (1992) (statements made one year before demotion held too vague and remote in time to establish discrimination); Tillman v. S. Wood Preserving of Hattiesburg, Inc., 2010 U.S. App. LEXIS 9181, at *6 (5th Cir. May 4, 2010) (affirming district court's dismissal of all claims based on events occurring more than 180

days prior to filing of EEOC charge); but see Hindman v. Transkrit Corp., 145 F.3d 986, 993 n.26 (8th Cir. 1998) (three-year-old statements, even if not themselves actionable, may be relevant as background evidence). As such, based on the fact that Hill's comments were made at least over two years before Plaintiff was terminated, they are considered "stray remarks" insufficient to demonstrate discrimination based on Plaintiff's sex.[8] See Sreeram v. Louisiana State Univ. Med. Ctr. - Shreveport, 188 F.3d 314, 320 (5th Cir. 1999).

Plaintiff also complains that she was treated differently than male employees at Premier Ford, as Hill allegedly would not "push her deals through" the way he did for other employees. Plaintiff claims that when a customer had poor credit, a finance manger such as Hill could still occasionally get the deal passed through. Plaintiff asserts that Hill never once got a deal pushed through for her, yet he did for others. Plaintiff maintains that Hill would ignore and dismiss her when she entered his office. While Defendant presented evidence of a "Salesperson Analysis Detail," labeled as Deposition Exhibit # 3, allegedly outlining deals that Plaintiff received from Hill, Plaintiff repeatedly stated in her deposition that Hill is not the person who gave her those deals. However, Plaintiff did concede that she had no knowledge of how Hill handled getting customers approved. Rather, Plaintiff asserts she

---

[8] This analysis is equally applicable to the comment allegedly made to Lisa Bush. Plaintiff attempts to use the comment made to Bush, that a coworker told her "she needed to be screwed," as evidence of sex discrimination. However, Bush was only employed at Premier Ford from December 7, 2006 until March 17, 2008. Thus, any deposition testimony provided by Bush would relate only to comments or conduct that occurred eleven months prior to Plaintiff's termination.

would hear other salesmen talking about how Hill got them a deal pushed through even though the customer had poor credit.[9]

Defendant asserts that Plaintiff never claimed that any of the alleged problems with Hill were based on her sex, as she states in her deposition that she believed Hill had a "personal vendetta against [her] for some reason."  While this may be true, Plaintiff did state in her deposition that, on more than one occasion, she complained to management about how Hill was treating females in general, especially her and Debbie Griffin, another sales*woman*. On the other hand, Plaintiff did concede in her deposition that she could no longer recall whether her issues with Hill still existed after returning back to work at Premier Ford in 2007. That is, Plaintiff states that after Bryan agreed to allow her to return to work, "everything was fine," and that her work-related issues did not begin again until she injured her knee by "hit[ting] [it] on the drawer."  If her most-recent work problems only came about due to her knee injury, this does not support her claim for sexual discrimination, and Plaintiff has conceded her claims for disability-based discrimination.

Next, Plaintiff avers that she and other females were treated differently when it came to "house deals."  In Lisa Bush's deposition testimony, she claimed that house deals were given to males over females about 99% of the time.  A house deal is a deal in which the sale is already completed without the need of a salesperson. Bush testified that once a house deal

_____

[9] Plaintiff conceded in her deposition testimony that Bryan, and not Hill, was the person with authority to terminate her employment. Thus, Defendant contends that Hill had no decision-making authority. While this is true, Hill was apparently in a managerial position as a Finance Manager. Specifically, Bryan conceded that, as Finance Manager, Hill was in the position to control whether Plaintiff obtained financing for her car sales.  Thus, Hill's alleged discrimination towards Plaintiff is at least relevant as background support for her Title VII claim.

was completed, Defendant would then assign the deal to a salesperson and the salesperson would receive the commission without having to work the sale. Plaintiff claims this distribution was done in a discriminatory fashion. Bush testified that 99% of the time, the house deal commission would be assigned to a male. There appears to be no dispute over the fact that Bush had personal knowledge of how such house deals were handled.

Plaintiff further attempts to show pretext/mixed-motive through the use of statistics. Plaintiff contends that "Defendant's business is overwhelmingly dominated by males." Plaintiff proffers that only one out of the five management positions were held by females at the time Plaintiff was employed at Premier Ford, and that there were only four saleswomen in comparison to ten salesmen. Statistical evidence may be used in a disparate treatment case "to show that an employer's justification for a discriminatory act is pretext." Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1137 (5th Cir. 1983). However, the Supreme Court has made clear that "[t]he probative value of statistical evidence ultimately depends on all the surrounding facts, circumstances, and other evidence of discrimination." See Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 340, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977). As such, while Plaintiff's use of statistics in this case does not demonstrate pretext, the statistics are probative when considered in tandem with Plaintiff's other evidence of alleged discrimination.

Plaintiff additionally asserts that, despite Defendant's repeated contention that she never complained of discrimination during her employment, not only did she complain, but Premier Ford also allegedly created an environment where females felt as if they could not lodge such complaints. Plaintiff alleges that after she and Griffin complained to the General Manager about Hill's treatment of females, Hill began bragging that this complaint resulted in

him receiving a pay raise. Plaintiff further provided Bush's deposition to support these allegations. Bush testified that, after she allegedly caught Hill altering a CARFAX report and complained to management about it, she was immediately terminated.

In response to Plaintiff's allegations, Defendant asserts that, not only has Plaintiff not met her burden, but also that an inference of nondiscrimination arises in this case due to the fact that the same individual that hired Plaintiff is also the same individual that terminated her. The Fifth Circuit has recognized this "same actor inference," which allows the Court to infer a lack of discrimination from the fact that the same individual both hired and terminated the plaintiff employee. Spears, 337 F. App'x at 421-22. Thus an inference of nondiscrimination does indeed arise in this action. Furthermore, Defendant also assigns great weight to the fact that Plaintiff, after leaving Premier Ford, voluntarily requested to have her job back. While this is true, and probative, the Court is unaware of any authority stating that the voluntary acceptance of a previous job obliterates a plaintiff's discrimination claim.

Whether summary judgment is appropriate in a Title VII case "depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" Price, 283 F.3d at 720 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. 2097). Here, Plaintiff has created factual disputes as to whether females were able to secure financing for their car deals and whether management assigned the commission from house deals in a discriminatory fashion. Further, Plaintiff provided support for the premise that other females at Premier Ford felt discriminated against and felt as if their complaints of discrimination were to no avail. While the majority of the

26

above-discussed sex discrimination allegations apparently occurred at least a year prior to Plaintiff's termination, and thus not actionable, such evidence does provide background support for Plaintiff's claim. See Denesha v. Farmers Ins. Exchange, 161 F.3d 491, 500 (8th Cir. 1998) ("[A] jury in assessing . . . whether there was intentional discrimination may consider the employer's conduct throughout the employee's tenure with the company.") (citing McDonnel Douglas, 411 U.S. at 804, 93 S. Ct. 1817; see also Fisher v. Procter & Gamble Mfg. Co., 613 F.2d 527, 540 (5th Cir. 1980) ("'A discriminatory act which is not made the basis for a timely charge . . . may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.'") (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558, 97 S. Ct. 1885, 52 L. Ed. 2d 571 (1977)); Morgan, 536 U.S. at 113 (an employee is not barred "from using . . . prior acts as background evidence in support of a timely claim"); Stewart v. Rutgers, 120 F.3d 426 (3d Cir. 1997) (permitting evidence of past acts of discrimination where the plaintiff sought to use such acts to show recent conduct of a similar nature was motivated by discrimination and not to create a separate and distinct claim); Small v. Mass. Inst. Tech., 584 F. Supp. 2d 284, 288 (D. Mass. 2008) (evidence before the statutory window begins "may nevertheless be considered to put the acts which form the basis of plaintiff's claim in context").

Plaintiff also has created factual disputes regarding the reasoning behind her termination.  That is, Defendant claims Plaintiff was fired for violating "workplace rules" and "policy." However, Defendant concedes that there is no actual rule or policy in place at Premier Ford. Further, Plaintiff's version of the incident regarding her alleged interference

with Jamerson's customer stands in stark contrast with Defendant's characterization of the facts as they occurred that day. The customer in question also provided an affidavit supporting Plaintiff's factual conclusions. Thus, "[e]ven if [Defendant] did have a policy (which seems unlikely) . . . a factual question remains as to whether [Plaintiff] violated that policy." Rachid, 376 F.3d at 315.  Given this, Plaintiff has at least created enough factual disputes to overcome a summary judgment motion under the pretext analysis or the mixed-motive framework. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's sex discrimination claim is denied.

b.  Race Discrimination

*Prima Facie Case*

Plaintiff additionally claims that she was terminated based on her race. Plaintiff appears to be able to establish a prima facie case of race discrimination. That is, Plaintiff (1) is an African American; thus, a member of a protected class under Title VII; (2) was qualified for the position she held as a salesperson; (3) experienced an adverse employment decision (i.e., termination); and (4) was apparently replaced by a "younger [Caucasian] woman."[10]

*Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a prima facie case of discrimination, the defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. Here, Defendant asserts that Plaintiff was terminated because she interfered with another

---

[10] Plaintiff stated that she was replaced by a "younger [Caucasian] woman" in her deposition testimony. The Court assumes this is true, as the Defendant does not appear to ever directly contest this statement.

salesperson's customer and because she displayed unprofessional conduct. This articulated

reason satisfies Defendant's burden of production.

*Pretext and Mixed Motive*

Under Plaintiff's heading labeled "Race Discrimination," she only writes the

following two sentences: "Gender was not the only issue, as Hill called Hollins a 'black bitch'

and frequently used the term 'nigger' in the workplace. When Hollins complained about this,

nothing was done."  First, as noted above, Hill's "black bitch" comment occurred sometime

prior to July 2007, and Plaintiff was not terminated until February 2009. See Guthrie, 941

F.2d at 379 (statements made one year before demotion held too vague and remote in time to

establish discrimination). Second, there is no evidence that the word "nigger" was frequently

used. Actually, Lisa Bush testified that she once heard Hill use this derogatory term, but she

could not remember when.[11] However, Bush was terminated in 2008; thus, she would have

heard this term used at least a year prior to Plaintiff's employment being terminated.

---

[11] The Fifth Circuit has held that "the term 'nigger' is a universally recognized opprobrium, stigmatizing African-Americans because of their race." Knatt v. Hosp. Serv. Dist. No. 1 of East Baton Rouge Parish, 327 F. App'x 472, 485 (5th Cir. 2009).  Thus, this word may imply direct evidence of discrimination in and of itself. See Kendall v. Block, 821 F.2d 1142, 1145-46 (5th Cir. 1987).  In this case, there is no dispute as to whether Plaintiff created an inference of discrimination, as this Court has already found that Plaintiff met her prima facie case. However, the use of that derogatory term, while raising an inference of discrimination, cannot *alone* show pretext when made at least a year prior to Plaintiff's termination, and when there is no evidence that the speaker (in this case, Cecil Hill) had authority to terminate Plaintiff's employment or that such language was used in relation to the employment decision. See Knatt, 327 F. App'x at 485 (noting that "it is not enough to present evidence that an employer or coworker used racial epithets at some point in the past"); see also Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 882-83 (5th Cir. 2003) (holding that the plaintiff failed to show pretext when the word "nigger" was not made at or around the time of the employment decision at issue, even though the individual who uttered such derogatory language actually participated in the decision-making process).

The record is also noticeably void of any evidence that Plaintiff complained about being treated disparately *due to her race*.[12] Instead, the only complaints Plaintiff claims she lodged were sex related.   Similarly, Plaintiff presents no evidence that she was treated differently than someone outside of her protected class.   Jamerson, the individual Plaintiff allegedly stole a customer from, is African American. Further, Plaintiff never even offers evidence of Carvin Tilley's race.   Instead, Plaintiff expressly states, on more than one occasion, the reason she was treated disparately is because she is female.   Simply put, besides the above-mentioned two stray remarks, Plaintiff provided *no* evidence that Defendant's decision was pretext for racial discrimination.   Further, there is no evidence Plaintiff's race was a "motivating factor" in Defendant's decision. In fact, Plaintiff fails to even include a pretext/mixed-motive analysis, and two stray remarks cannot alone establish racially-motivated animus.   Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's race discrimination claim is granted.

### Age Discrimination Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of employment discrimination under the ADEA for discharge, Plaintiff must prove that: "(1) [she] was discharged; (2)[she] was qualified for the position; (3)[she] was within the protected class at the time of discharge;

---

[12] The only instance where Plaintiff *might* have complained about racial animus was in her 2007 meeting with Defendant's General Manager, in which she *might* have told the General Manager that Hill called her a "black bitch."

and (4)[she] was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." Berquist v. Washington Mut. Bank, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted). Once a plaintiff establishes a prima facie case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005). This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment." Hicks, 509 U.S. at 509, 113 S. Ct. 2742. If the defendant meets this burden, the plaintiff must establish that the employment action occurred because of intentional age discrimination. Machinchick, 398 F.3d at 350. This means that a plaintiff bringing a disparate-treatment claim under the ADEA must prove "that age was the but-for cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., --- U.S. ----, ----, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009) (internal quotation marks omitted).[13]

### Prima Facie Case

Plaintiff has met her burden of proving a prima facie case of age discrimination. That is, Plaintiff can show that she (1) was terminated from her employment; (2) was qualified for her position; (3) was over forty at the time of her termination, and thus part of the protected

---

[13] Since the Court finds that Plaintiff has failed to raise a genuine dispute as to any material fact regarding her age discrimination claim, the Court declines to address whether Gross's "but for" standard for discrimination under the ADEA precludes a plaintiff from pleading or recovering on alternative theories of liability. Compare Culver v. Birmingham Bd. of Educ., 646 F. Supp. 2d 1270, 1271 (N.D. Ala. 2009) (the "only logical inference to be drawn from Gross is that an employee cannot claim that age is a motive for the employer's adverse conduct and simultaneously claim that there was any other proscribed motive [in this case racial discrimination] involved") with Griffin v. United Parcel Service, Inc., 2010 WL 126229, at *2 (E.D. La. Jan. 8, 2010) (holding that plaintiffs may plead in the alternative without circumventing Gross's but-for standard).

class, see 29 U.S.C. § 631(a) (protecting individuals "who are at least 40 years of age"); and (4) she was apparently replaced by a younger Caucasian female.

*Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a prima facie case of discrimination, the defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. Here, Defendant asserts that Plaintiff was terminated because she interfered with another salesperson's customer and because she displayed unprofessional conduct. This articulated reason satisfies Defendant's burden of production.

*Pretext*

Plaintiff's age discrimination claim is appreciably less supported than her racial discrimination claim. Plaintiff actually fails to present any evidence of age discrimination other than the fact that Defendant hired a younger individual after Plaintiff was terminated. Instead, Plaintiff submits that "The pretext analysis for the ADEA is the same as Title VII. [Plaintiff], in the name of judicial economy, incorporates her Title VII pretext analysis." While this Court is most certainly appreciative of judicial economy, Plaintiff's Title VII analysis never once mentions age or ageist comments or any other evidence that Plaintiff was discriminated against because of her age. The fact that Defendant hired someone younger than Plaintiff cannot alone establish pretext. As such, Defendant's Summary Judgment Motion as to Plaintiff's age-based discrimination claim is granted.

### Retaliation Claim

Plaintiff also alleges that her termination constitutes retaliation in violation of Title VII. A plaintiff establishes a prima facie case of retaliation by showing that: (1) she engaged

in an activity protected by Title VII; (2) she was subjected to an adverse employment action; (3) a causal link exists between the protected activity and the adverse employment action. See Stewart v. Mississippi Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. Aryain v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484 (5th Cir. 2008). If the employer satisfies its burden of production, the plaintiff must prove that the employer's proffered legitimate, nondiscriminatory reason is pretext for a retaliatory purpose. Id. In doing so, the plaintiff must prove that "the adverse employment action taken against [her] would not have occurred 'but for' her protected conduct." Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005); see also Long v. Eastfield College, 88 F.3d 300, 304 n.4 (5th Cir. 1996) ("ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision") (citing McDaniel v. Temple Indep. Sch. Dist., 770 F.2d 1340, 1346 (5th Cir. 1985)).

However, recently, the Fifth Circuit applied the reasoning of Desert Palace to Title VII retaliation claims, thus providing plaintiffs with another avenue, other than just pretext, to prove retaliation. See Smith, 602 F.3d at 332. Accordingly, a Title VII plaintiff – whether asserting discrimination or retaliation claims - may now rebut a defendant's legitimate, nondiscriminatory reason for an adverse employment action by proving that "(1) the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives

33

alternative)." <u>Davis v. Farmers Ins. Exch</u>., 2010 U.S. App. LEXIS 7130, at *5 (5th Cir. Apr. 6, 2010).

<em>Prima Facie Case</em>

Plaintiff claims that she was retaliated against for complaining to Defendant about her "work environment." Plaintiff appears to have satisfied the first and second elements of her prima facie case. She was terminated and she allegedly complained of her beliefs of discrimination. Plaintiff's complaints constitute protected activity. 42 U.S.C. § 2000e-3(a) (2001) (protected activity is defined as opposition to any practice rendered unlawful by Title VII).[14]

As for the third prong of her prima facie case, "a plaintiff need not prove that [her] protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." <u>Evans v. City of Houston</u>, 246 F.3d 344, 353 (5th Cir. 2001); <u>see also</u> <u>Montemayor v. City of Antonio</u>, 276 F.3d 687, 692 (5th Cir. 2001) (the causation showing at the prima facie stage is much less stringent than the "but for" standard). The temporal proximity between an employee's protected activity and an adverse employment action may provide insight into the existence of a causal link. <u>See</u> <u>Swanson v. Gen. Servs. Admin.</u>, 110 F.3d 1180, 1188 (5th Cir. 1997), <em>cert. denied</em>, 522 U.S. 948, 118 S. Ct. 366, 139 L. Ed. 2d 284 (1997).

Here, temporal proximity alone is insufficient to establish Plaintiff's prima facie case of retaliation. The last instance of any alleged complaint occurred sometime in 2008. That is,

---

[14] While Plaintiff filed a workers' compensation claim in this case after injuring her knee, Plaintiff's retaliation claim is not based on this filing. Rather, Plaintiff's retaliation claim solely surrounds her complaints regarding the alleged existence of discrimination at Premier Ford.

Plaintiff states she complained about Johnny Smith "cuss[ing] [her] out" in 2008; however, she never actually states when in 2008 this occurred, and Plaintiff was not terminated until 2009. In Clark County School District v. Breeden, the Supreme Court noted that "cases that accept mere temporal proximity . . . as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be *very close*." 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (emphasis added). Here, Plaintiff cannot meet this "very close" standard. Thus, temporal proximity does not support a finding that Plaintiff has established a prima facie case of retaliation.[15]

Even so, the Fifth Circuit has also considered other factors besides proximity in determining a causal link. These factors included the employee's past disciplinary record and whether the employer followed its typical policy and procedures. See Nowlin v. Resolution Trust Corp., 333 F.3d 498, 508 (5th Cir. 1994). Here, the Plaintiff, with the exception of one incident, has a satisfactory disciplinary record. In 2006, Plaintiff appears to have sent falsified customer records to a lending institution in order to assist a customer with financing. Although Defendant contends that this conduct could have resulted in Plaintiff's termination, Defendant made the decision to continue Plaintiff's employment as a salesperson. Other than this 2006 falsification of customer records, Bryan conceded in his deposition that Plaintiff

---

[15] Plaintiff makes the argument that she can meet her prima facie case of retaliation based on temporal proximity because "[s]he did not have time to complain when Bryan called her a 'bitch' on February 6, 2009 because she was fired." While this may be true, if a plaintiff could establish retaliation solely based on the fact that there was no time to complain *after* she was terminated, this would mean that anyone who had been terminated could meet their prima facie case simply due to the fact that they were indeed subjected to such an adverse employment action. All that would be necessary would be for a plaintiff to say, "I did not have time to complain." Further, the premise behind retaliation is that a plaintiff was subjected to an adverse employment action *because of* her complaints or other protected activity, not because the employer failed to offer her time to engage in such activities.

was a good employee and salesperson. As to past policies and procedures, the Court is unable to establish whether the Defendant followed its typical procedures in this case, as there is no evidence illustrating whether any other employees were terminated for interfering with a coworker's sale. Thus, based on Plaintiff's adequate disciplinary record and the fact that, as the Court discussed above, Defendant apparently does not have an actual policy against such interference with a coworker's sale, the Court will assume for purposes of this Memorandum Opinion that Plaintiff can satisfy her prima facie case of retaliation.

*Legitimate, Nondiscriminatory Reason*

Once a plaintiff establishes a prima facie case of discrimination, the defendant must then articulate a legitimate, nondiscriminatory reason for its employment action. Here, Defendant asserts that Plaintiff was terminated because she interfered with another salesperson's customer and because she displayed unprofessional conduct. This articulated reason satisfies Defendant's burden of production.

*Pretext and Mixed Motive*

Plaintiff presents no new evidence of pretext under her retaliation case. Instead, Plaintiff again states that based on judicial economy, she incorporates her Title VII gender and race pretext analysis into her retaliation analysis. Plaintiff did not provide a race discrimination pretext analysis, and Plaintiff's sex/gender discrimination analysis only mentioned that Plaintiff did indeed complain about how females were treated. However, complaints, especially complaints approximately a year prior to termination, cannot alone establish pretext or mixed motive. Plaintiff must show her termination was a result of or motivated by these complaints. Further, even if a year-old complaint was enough to establish

close temporal proximity, unlike the third element of Plaintiff's prima facie retaliation claim,

when a plaintiff attempts to prove pretext/mixed motive, temporal proximity alone is

insufficient. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007).

As such, Plaintiff has simply failed to provide the Court with any evidence that retaliation was

the either the "but for" cause of her termination or that it was a motivating factor in the

Defendant's decision.    Accordingly, Defendant's Motion for Summary Judgment on

Plaintiff's retaliation claim is granted.

***Punitive Damages***

Defendant also seeks summary judgment on Plaintiff's claim for punitive damages. A

plaintiff who prevails on her Title VII claim may recover punitive damages if she makes the

required showing. Following the Supreme Court's decision in Kolstad v. Am. Dental Ass'n,

527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999), the Fifth Circuit has set forth the

standard to be applied when an employer is alleged to be liable for punitive damages based on

the actions of a managerial employee:

> A plaintiff may recover punitive damages if the defendant acted "with malice
> or with reckless indifference to the federally protected rights of an aggrieved
> individual." 42 U.S.C. § 1981a(b)(1). The availability of punitive damages
> turns on the defendant's state of mind, not the nature of the defendant's
> egregious conduct. Kolstad[ ], 527 U.S. [at 535, 119 S. Ct. 2118].    The
> employer "must at least discriminate in the face of a perceived risk that its
> actions will violate" the [discrimination statute]. Id. at 536 . . . Moreover, the
> plaintiff must show that the "malfeasing agent served in a 'managerial
> capacity' and committed the wrong while 'acting in the scope of employment.'
> "Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 405 (5th Cir.
> 2000) (citing Kolstad, 527 U.S. at 541). However, under the good-faith
> exception, "an employer may not be vicariously liable for the discriminatory
> employment decision of managerial agents where these decisions are contrary

to the employer's good-faith efforts to comply with Title VII." <u>Id.</u> (citing <u>Kolstad</u>, 527 U.S. at 545) (internal quotation marks omitted).

<u>E.E.O.C. v. E.I. Du Pont de Nemours & Co.</u>, 480 F.3d 724, 732 (5th Cir. 2007). The Fifth Circuit has found "good faith" efforts to exist where the employer "had a well-publicized policy forbidding sexual harassment, gave training on sexual harassment to new employees, established a grievance procedure for sexual harassment complaints, and initiated an investigation of the plaintiffs' complaints." <u>Hatley v. Hilton Hotels Corp.</u>, 308 F.3d 473, 477 (5th Cir. 2002).

In the present case, Defendant seeks summary judgment on Plaintiff's punitive damages claim contending that its conduct falls short of the above-discussed applicable standards. However, the Court is of the opinion that since the presentation of proof at trial will allow for a more informed decision, Defendant's motion should, at this point, be denied.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted in part and denied in part. Defendant's Motion is granted with respect to Plaintiff's sexually-based hostile work environment claim, Plaintiff's race discrimination claim, Plaintiff's age discrimination claim, and Plaintiff's retaliation claim. Defendant's Motion is denied as to Plaintiff's sex discrimination claim, and Plaintiff's claim for punitive damages.

So ordered on this, the _7th_ day of February, 2011.

/s/   **Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**